ENSIGN v. CENTRAL NEW YORK TELEPHONE & TELEGRAPH CO.

(Supreme Court, Appellate Division, Third Department.   January 14, 1903.)

1. NEGLIGENCE—TELEPHONE WIRE—OBSTRUCTION TO HIGHWAY—EVIDENCE—
   QUESTION FOR JURY.
       Where plaintiff was injured, while riding on a highway, by contact with
   a telephone wire thrown down by a large limb of a partially decayed tree
   falling on and breaking the telephone pole, evidence examined, and *held*
   that the question of negligence of the telephone company was for the jury.
       Parker, P. J., dissenting.

Appeal from special term, Madison county.

Action by Carrie Ensign against the Central New York Telephone
& Telegraph Company.   From a judgment for plaintiff, and from an
order refusing a new trial, defendant appeals.   Affirmed.

Argued before PARKER, P. J., and KELLOGG, SMITH,
CHASE, and CHESTER, JJ.

Albert F. Gladding, for appellant.
M. H. Kiley, for respondent.

CHASE, J.   The defendant in 1885 constructed a telephone line
between the villages of Cazenovia and Morrisville, Madison county,
and other places.   In the town of Nelson, poles were erected along
the north side of the public highway, until near the house of one
M., and they were then continued on the south side of the highway.
The wire was strung across the highway at that point at a slight
angle.   The last pole to the west on the north side of the highway
was set about 6 feet from the base of an old maple tree, which was
about 2½ feet in diameter, and was standing in an angle of the high-
way fence.   In 1898 defendant's employés strung an additional wire
on the poles, and at that time they tested the pole by the maple tree
by pressing against the top of the same with long pike poles, and
it resisted such pressure.   Said employés then added a guy wire
to said pole, and fastened the same to a small tree north of the
pole.   On the 23d day of June, 1899, there was a thunder shower,
accompanied by wind; and a limb from said maple tree, which limb
was from 15 to 18 inches in diameter, and continued that size for
10 or 12 feet, and then tapered and extended other branches, and
was, in all, 35 or 40 feet long, and weighed several hundred pounds,
fell upon the wires and pole, breaking the pole where it entered
the ground, and also at a point a short distance below where the
wires were fastened thereon.   The wires were not broken, but were
held down to the ground, and, as so held down, crossed the highway
at an angle of about 45°.   On the north side of the traveled road
they were 6 feet above the ground, and on the south side of the
traveled road they were 8 feet above the ground.   Very soon after
the limb fell as stated, the plaintiff drove along the highway with a
horse and low top carriage.   She did not see the wires, and as she
drove under them the top of her carriage was caught by one of the
wires, and the carriage was overturned, and plaintiff was injured,
for which injuries this action is brought.

The accident to the plaintiff occurred so quickly after the wires were down and the highway was obstructed that there is no question in this case of negligence arising from defendant's delay in repairing the line. The pole was very badly decayed at its base, but it was not only broken at the base, but also a short distance below where the wires were fastened, at which point it was sound. The defendant has shown that the weight of the limb was such that its fall would have broken a new cedar pole, and that the two wires were of sufficient strength to hold a weight of four tons. This testimony is a concession that the natural and necessary effect of the limb's falling was to break the pole, and to press the wires there crossing the highway down so that they would become more or less of an obstruction to travel. The proximate cause of the obstruction to the highway was the falling of the limb. Defendant insists that there was nothing to show that the limb was likely to fall, and that the danger was not one reasonably to be apprehended. Whether such contention is correct, as a matter of law, is the principal question for determination on this appeal. The defendant, in the erection and maintenance of its line, was not required to exercise extraordinary and unusual care, and it was not obliged to take into account accidents that might possibly arise in case of unusual and extraordinary occurrences that would not reasonably be apprehended by a prudent person. Fitch v. Telegraph Co., 42 App. Div. 321, 59 N. Y. Supp. 140. The defendant was required to exercise reasonable and ordinary care, and such care as an ordinarily prudent person is supposed to exercise in connection with his personal business and transactions. The duty of the defendant to use reasonable and ordinary care extended to the selection and maintenance of the place where the poles and wires were located. We assume that if the defendant had erected a pole at a point of known and conceded danger, by reason of an overhanging limb of sufficient weight to break a new telephone pole, and that the natural and necessary result of the falling of such limb would be to drop the wires so as to obstruct the public highway, it would be conceded that the erection of a pole at such a place would be negligence on the part of the defendant. Conceding that it is possible for a telephone company to so locate a pole in the immediate vicinity of a known and conceded danger as to make the company liable for damages arising by reason of an obstruction to the highway on the happening of such known and conceded danger, it becomes a question in this case whether the defendant knew or ought to have known that the limb was likely to fall from the tree upon the pole there located as it did in fact fall. From the evidence in this case the jury might have found that the center of the maple tree had been dead for years before the telephone line was erected; that the dead center dropped out before 1897; that at the time defendant's employés and inspectors were stringing the second wire on the pole in 1897, and for a number of years prior thereto, the tree was old and rotten, with large limbs partly dead, and that their decayed condition could be plainly seen from the road as a person was going west; that the large limb that fell, although in full leaf so far as it was alive, had dead limbs on it as large as a person's leg; and that

where it joined the main trunk of the tree there was a seam, and it was there decayed, except for a strip about three inches wide along the lower part thereof, that splintered down the tree at the time the limb fell. From the evidence the jury might have found, also, that the thunder shower and wind were neither unusual nor extraordinary. There is not one word of evidence to show that the defendant's employés looked at the tree, or gave it any consideration whatever, at the time of the inspection of the poles and the stringing of the second wire, or at any other time. We cannot say, as matter of law, that the falling of this unusually large and partially decayed limb was not a danger reasonably to be apprehended by a prudent person. If the danger was reasonably to be apprehended, the defendant should have moved the pole, or, after obtaining the necessary authority, have removed the tree or the dangerous limb therefrom. Plaintiff's contributory negligence was a question of fact.

It is suggested that to sustain a verdict of this kind requires a very unusual combination of circumstances, and that a telephone company should not ordinarily be held for damages occurring by injury to their poles and wires by the falling of trees or of limbs therefrom. We do not dissent from such suggestion, and consider this case on the border line for sustaining a verdict. Judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur, except PARKER, P. J., dissenting, and KELLOGG, J., not voting.